581 A.2d 828

**Cindy RUPPERT**

**v.**

**John E. FISH, Jr.**

**No. 48, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 7, 1990.

Michael B. Green, Towson, for appellant.

Jules R. Bricker (Gerald Solomon, on brief), New Carrollton, for appellee.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

WILNER, Judge.

The parties here were once married and are now divorced. Their current dispute centers on their child's education—which private school he is to attend, who is to make that decision, and who is to pay for that schooling. The Circuit Court for Baltimore County, interpreting a separation agreement between the parties in light of two subsequent court orders, decided that (1) the father had to pay for the child's private schooling, (2) for the 1988–90 school years, the child was to attend McDonogh School, and (3) thereafter, the father could determine which private school the child would attend. Neither party is entirely happy with those decisions, and so both have appealed. We shall

affirm part of the judgment and remand another part for further proceedings.

In July, 1983, prior to their divorce, the parties prepared for themselves a separation agreement that, for whatever reason, they did not actually sign until some 15 months later, in October, 1984. The agreement gave the wife, Cindy, custody of the child, Christan, subject to liberal visitation privileges on the part of the father, John. Paragraph 3 provided, in relevant part, that John would pay $40 a week in child support directly to Cindy and that: "Also the husband agrees to pay for the child[']s schooling for which right the Husband will have the right to choose the child[']s education, until the Husband dies, the child obtains eighteen (18) years of age, dies, marries, or becomes self-supporting, whichever event first occurs."

The divorce decree was entered by the Circuit Court for Howard County on January 30, 1985. It provided, in relevant part, that:

"The defendant [Cindy] shall have custody of the minor child, with the plaintiff husband having liberal visitation rights pursuant to the terms of their separation agreement, and the plaintiff shall pay the defendant child support in the amount of $40 per week pursuant to the terms of their separation agreement, however subject to the further order of this court."

When the agreement was prepared in 1983, Christan was two-and-a-half years old and was enrolled in a day care program that had been selected by John; he was still enrolled in a pre-school program when the agreement was ultimately signed in October, 1984 and when the divorce decree was entered in January, 1985. In the Fall of 1986, Christan began attending the pre-first grade at McDonogh School, a private school located in Baltimore County; that school was selected by John, although it was agreeable to Cindy. John paid the tuition. At about the same time, Cindy filed a complaint in the Circuit Court for Baltimore County to increase the child support and modify the visitation schedule. The end result of that proceeding was a

consent order entered on September 8, 1987, which (1) increased John's child support from $40 to $75 a week, (2) modified the visitation schedule somewhat, (3) provided that "the father shall pay for the private school tuition, with the mother paying for all school clothes," and (4) further provided that "any and all previously issued Orders, unless specifically modified, shall remain in full force and effect."

Christan continued at McDonogh for the 1987–88 school year; John paid the tuition. At some point prior to March, 1988, John, faced with a declining income from his occupation as a real estate appraiser, informed Cindy that he would not be able to continue Christan at McDonogh for the 1988–89 year unless she agreed to pay half the tuition. He proposed as an alternative that Christan go to a nearby Catholic school, Holy Family. According to John, Cindy objected to Holy Family but suggested instead that Christan be enrolled at St. Charles Borromeo, another Catholic school. He claimed that he thereupon registered Christan at St. Charles School for the 1988–89 school year, but that Cindy then objected to that school as well.

Cindy did indeed object to the switching of schools. In March, 1988, she filed a petition to enforce the provision of the September, 1987 consent order obligating John to pay for Christan's private schooling. She contended that Christan was happy at McDonogh and was doing well there, that the school was convenient to where they lived, and that John could afford the tuition. She asserted that the first installment of the tuition for the 1988–89 school year was due March 1, 1988, and that John had refused to pay it. She asked that John be ordered to pay the tuition and that the consent order be modified to convert the tuition into child support payable directly to her.

John initially responded to this petition with a motion to dismiss, contending that (1) to the extent it represented an action for specific performance, it was inappropriate because Cindy had an adequate remedy at law and (2) to the extent that it sought a change in the child support, Cindy had failed to allege a change in circumstances.

The motion to dismiss was heard by Judge Levitz on December 1, 1988. Judge Levitz regarded the separation agreement as essentially irrelevant with respect to the issue then before him, as it had not been incorporated into the divorce decree or the consent order. Without intending to preclude John from either pursuing some action under the agreement or filing a petition to modify the consent order, Judge Levitz noted that Cindy's petition was to enforce the consent order and therefore determined that that order was all that was before him. The order required John to pay the private school tuition; Christan was then at McDonogh School; that was the tuition that had to be paid. These pronouncements were made from the bench.

On December 8, 1988, Judge Hennegan, presumably acting as chambers judge, signed an order implementing Judge Levitz's decision. The order directed John to reimburse Cindy for the $3,900 she had previously paid toward the 1988–89 tuition and to pay the balance of that tuition ($2,075) by January 1, 1989. In a timely filed motion to alter or amend that order, John complained that the proceeding before Judge Levitz was on a motion to dismiss for failure to state a claim, not on the merits, and that the order requiring him to pay the tuition was therefore improper. He had not had the opportunity to answer the petition.

What occurred immediately thereafter is a bit confusing. Judge Levitz apparently found merit in the argument presented in the motion to alter or amend, for, on December 13, 1988, he granted the motion and gave John ten days in which to answer Cindy's petition. In seeming contradiction to that ruling, however, Judge Levitz, on January 9, 1989, filed a written "Motions Ruling" granting Cindy's motion to enforce the consent order and denying John's motion to dismiss. At some point, John complied with Judge Hennegan's order and paid the full amount of the 1988–89 tuition ($5,975). Pursuant to the ruling on the motion to alter or amend, however, John also filed an answer to Cindy's petition to enforce and a two-count counterclaim. In that counterclaim, he (1) contended that by thwarting his effort

to enroll Christan at St. Charles School, Cindy had breached the provision of the separation agreement giving him the right to choose Christan's school, for which he sought damages, and (2) sought a modification of the consent order to make clear that his obligation to pay the tuition would apply only if he were allowed to select the school or, alternatively, to terminate his obligation for tuition. With respect to the latter, he averred that the 1987 consent order was "never meant to modify the father's right to choose the private school of the child as a condition precedent of the obligation to pay for said school."

The merits of this controversy, encompassing both Cindy's petition (apparently still alive despite the January 9 order) and John's counterclaims, came before Judge Hinkel on August 29, 1989. By that time, of course, the question of where Christan would go to school in the 1989–90 school year had also come into issue. After an evidentiary hearing, Judge Hinkel determined that (1) there was no inconsistency between the clause in ¶ 3 of the separation agreement giving John the right to select Christan's school and the subsequent decree and consent order; (2) that part of the agreement was not incorporated or merged in that decree or order and thus stood as an independent, enforceable right; (3) although John's financial circumstances had deteriorated, they had not declined to the point of constituting a material change in circumstances—i.e., he could still afford the McDonogh tuition; (4) Christan's best interest would not be served by removing him from McDonogh for the 1989–90 school year, which was just about to commence, and that John would therefore have to pay the tuition at McDonogh for that year; but (5) thereafter, by virtue of the agreement, John was free to withdraw Christan from McDonogh if he so chose. In an order filed October 13, 1989, the court declared that the separation agreement was lawful and enforceable and that John therefore was obliged to pay private school tuition "at a school of his choosing"; that there was no substantial change in his circumstances; that he be enjoined from changing schools until the end of

the 1989–90 school year; that he pay the McDonogh tuition for 1989–90; and that his breach of contract action be dismissed.

As we indicated, both parties have appealed. Cindy complains that the court erred in allowing John to change schools after the 1989–90 school year based solely upon the separation agreement and without regard to the best interest of Christan. Although that allowance is not expressly articulated in the written order, it is certainly implicit in the order, given the conclusions announced by Judge Hinkel from the bench. John is undisturbed by that ruling but complains that the court erred in precluding him from exercising that right for the 1988–89 and 1989–90 school years and forcing him to keep Christan at McDonogh and pay the full tuition for those years. We find qualified merit in Cindy's complaint but none in John's.

Two basic issues are presented in the appeal and cross-appeal: (1) whether John's contractual right to pick Christan's school has been lost because the agreement was incorporated or merged in the 1985 divorce decree, which was later supplanted, in part, by the 1987 consent order, and (2) if not, whether the court nonetheless retained the authority to modify the contractual provision and either abrogate or limit John's discretion to choose the school upon proof that the vesting of such discretion in John is no longer in Christan's best interest.

## I. *Incorporation*

The thrust of Cindy's first argument is that the agreement was incorporated and merged into the January 30, 1985, judgment of divorce and is, therefore, unenforceable because it was "superseded" by that judgment, which says nothing of John's right to choose Christan's school. We disagree.

■ Md.Rule S77 b. permits a separation agreement to "be incorporated, *insofar as the court may deem proper*" into a subsequent judgment. (Emphasis added.) It is clear from this, and from *Goldberg v. Goldberg*, 290 Md. 204, 428

A.2d 469 (1981), that a court may incorporate all, part, or none of such an agreement into its judgment. Incorporation is accomplished when, and to the extent that, the court refers to or identifies the agreement, or the parts of it to be incorporated, and either expressly states that it is to be incorporated into the judgment or otherwise makes clear that its provisions are to be regarded not merely as covenants of the parties but also as court directives.[1] Where there is only a partial incorporation, those parts of the agreement not incorporated retain their status as contractual provisions. They may, in some instances, necessarily be affected or limited by the judgment and they may, in turn, affect or explain parts of the judgment, *see Goldberg, supra,* but, at least absent any clear inconsistency with the judgment, they are not abrogated by the judgment.

■ The 1985 judgment specifically referred to only three provisions of the agreement—those dealing with custody, visitation, and the amount of periodic support. No mention was made of John's obligation to pay the private school tuition or his right to choose Christan's school. Clearly, then, there was no incorporation of those provisions into the judgment. The 1987 consent order added only one new element—that John "shall pay for the private school tuition, with [Cindy] paying for all school clothes." Again, nothing was said about what school Christan was to attend or who was to make that decision. We therefore see no basis for a conclusion that the court intended to abrogate the contractual arrangement in that regard. It therefore was not supplanted by the order through any notion of incorporation.

As the agreement is still an enforceable contract between the parties, Cindy's and John's rights and liabilities are established by its terms. *Goldberg,* 290 Md. at 212, 428

---

1. In *Mendelson v. Mendelson,* 75 Md.App. 486, 498, 541 A.2d 1331 (1988), we construed "incorporation" to mean that "the court will identify the separation agreement and approve it as valid." This is really saying the same thing, although in more general terms.

A.2d 469; *Bruce v. Dyer*, 309 Md. 421, 433, 524 A.2d 777 (1987). In short, subject to the discussion below regarding the best interests of the child, John has both the right to determine what school Christan will attend and the obligation to pay for his education.

## II. *Modification*

The parents of a minor child are generally free to enter into an agreement respecting the care, custody, education, and support of their child. Indeed, they are the persons who *ought* to decide those things. Unlike certain other aspects of a marital relationship that can be the subject of an agreement, however, provisions relating to the welfare of minor children are, by statute, subject to court modification. Md.Fam.Law Code Ann. § 8–103(a) provides that "[t]he court may modify any provision of a deed, agreement, or settlement with respect to the care, custody, *education,* or support of any minor child of the spouses, if the modification would be in the best interests of the child." (Emphasis added.)[2]

Although there may be some distinctions to be drawn between provisions of this type that are eventually merged or incorporated into court judgments and those that remain solely a matter of contract, it is clear from the statute that, in either case, they are not immune from court modification. *See Stancill v. Stancill,* 286 Md. 530, 535–36, 408 A.2d 1030 (1979). That does not mean, however, that the agreement between the parents is meaningless or that it may be casually disregarded as the court searches elsewhere for what is in the best interest of the child. Absent some

---

**2.** Section 8–103(a) is derived ultimately from 1931 Md.Laws, ch. 220, which first statutorily validated spousal agreements concerning support, property rights, and personal rights but made clear that provisions in such agreements affecting the care, custody, education, or maintenance of infant children were subject to court modification "looking always to the best interests of such infants." As noted in *Tvardek v. Tvardek,* 257 Md. 88, 96–97, 261 A.2d 762 (1970), the courts had effectively reserved this power to themselves as early as 1920, after the enactment of 1920 Md.Laws, ch. 573.

defect that would make the agreement invalid or unenforceable, it ordinarily should be given effect; the court should presume, in other words, at least in the absence of compelling evidence to the contrary, that the decision or resolution reached agreeably by the parents is in the best interest of their child. Such a presumption simply gives credence to what we think is the soundly based supposition that, while parents, like all humans, often make mistakes, they will not ordinarily agree in writing to act in a manner detrimental to their children.

Chief Judge Murphy, speaking for this Court in *Pumphrey v. Pumphrey*, 11 Md.App. 287, 292, 273 A.2d 637 (1971), set forth the appropriate standard to be used in cases such as this. *Pumphrey* involved a separation agreement that provided for the support of a minor child and that was later incorporated into a decree, although, as we observed, that latter event is not determinative of the court's authority to modify such a provision. Under the predecessor statute to § 8–103(a)—art. 16, § 28—the support provision, like the one before us, was subject to modification by the court. Noting that section, Judge Murphy said, at 292, 273 A.2d 637:

> "Section 28 thus invests the court with power to modify any order as to support and maintenance for a minor child, despite any agreement on the subject between the parties, *so long as the best interests of the child so require.* [citations omitted.] Where the best interests of the child do not require modification of a separation agreement incorporated into a decree the court is without power to modify it by eliminating or reducing the agreed payment for the minor's support."

(Emphasis in original.)

The current statute, § 8–103, uses the phrase "if the modification would be in the best interest of the child" rather than "so long as the best interests of the child so require," but we believe that the substance of the statute

was unchanged.[3] It remains evident, then, that, although the court has the power to modify those kinds of provisions, whether or not incorporated into a later judgment, it ought not do so unless it finds (1) that the provision in question does not serve the child's best interest and (2) the proposed modification does.

The court effectively applied that standard in refusing to permit John to withdraw Christan for the 1988–90 school years, and, given the circumstances—the fact that Christan was either in the middle of the school year or just about to start one—we cannot say that the court erred or abused its discretion in arriving at that decision. Unfortunately, the court did not apply that standard in allowing John to exercise freely his right to choose the school thereafter; that determination was based solely on the agreement itself. It may well be that John should be able to make that decision, for, as the court noted, if Cindy is empowered to block his choice, it effectively means that *she* can make the choice, which is not only contrary to the agreement but, upon the record before us at this point, seemingly no more in Christan's best interest than if John were to make the decision. Nor should Cindy be permitted to run to court each year to challenge John's decision simply because she disagrees with it. It is not for the court to decide where Christan goes to school; it is merely for the court to determine whether it remains in Christan's best interest for that decision to be made by John.

We shall vacate, without affirmance or reversal, that part of the October 13, 1989 order permitting John to choose the school after the 1989–90 school year pursuant to the agreement and remand that aspect of the case to the Circuit Court so that it can apply the proper standard in deciding that issue. Cindy will have the burden of proving to the

---

**3.** The alteration came about through Code Revision—the enactment of the Family Law article—and the Revisor's Note to § 8–103 makes clear that the section was "derived without substantive change from the second and third sentences of former Art. 16, § 28."

court that the provision of the agreement allowing John to choose which private school Christan will attend is no longer in Christan's best interest and that the modification of that provision which she seeks will better serve that interest. As it is evident that John's contractual undertaking to pay for private schooling was based, at least in part, on his ability to pick the school, his continuing obligation to be solely responsible for that expense should be reexamined in the event the court decides to limit or abrogate his authority to choose the school.

We believe that this analysis of the matter suffices to resolve all of the issues raised by the parties in their respective appeals; to the extent that it does not, we simply observe that we find no other basis for reversing or vacating the orders appealed from.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.