806 A.2d 768

James F. KNOTT

v.

Marlene D. KNOTT.

No. 1187, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Sept. 5, 2002.

234

Rudolf A. Carrico, Jr., La Plata, for Appellant.

Marlene Denise Knott, Mechanicsville, for Appellee.

Argued before DAVIS, DEBORAH S. EYLER and GREENE, JJ.

Opinion by GREENE, J.

This appeal arises from a decision of the Circuit Court for St. Mary's County refusing to modify or vacate an interlocutory consent order for the payment of money. Appellant, James Francis Knott, Jr., agreed with his wife, appellee,

Marlene Denise Knott, that he would pay the mortgage and other expenses in connection with the family home during the period of use and possession enjoyed by appellee and the parties' minor child, Mallory Jean Knott.

The Consent Order that memorialized the agreement designated the payments as "payments in lieu of child support." Appellant's new obligation equaled $1,316 monthly, more than double the amount he was obligated to pay under a previous consent *pendente lite* child support order. The new Consent Order, signed by the circuit court judge on September 3, 1999, terminated appellant's obligation under the prior *pendente lite* order. As of the time this appeal was noted, the September 3, 1999 Consent Order had not been made final by the entry of the Judgment of Divorce,[1] which finally disposed of all remaining issues in the case without incorporating the Consent Order in it.

## ISSUES

Appellant noted this appeal to present the following questions for review, which we have rephrased:

1. Did the circuit court err in denying appellant's request to modify the September 3, 1999 Consent Order requiring him to pay specific monthly and annual expenses in lieu of child support?

2. Did the circuit court, after concluding that the Consent Order does not contain a form of child support, err in failing

---

1. Md. Rule 2–602(a) states:

 Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim or that adjudicates the rights and liabilities of fewer than all the parties to the action: (1) is not a final judgment; (2) does not terminate the action as to any of the claims or any of the parties; and (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all parties.

to find that the order was in violation of the State's public policy and therefore void?

Appellee further raises the following question:

Should the appeal be dismissed as premature?

With regard to appellee's question, we hold that we have jurisdiction to decide the matter.

For reasons that we shall explain, we reverse the court's denial of appellant's request to modify the order. We remand the case to the trial court for further proceedings consistent with this opinion.

Because the order appealed was interlocutory, the correct standard for modification of an order concerning care, custody or support of a minor child is the best interest of the child pursuant to FL 8–103. Such orders are subject to revision at any time before the entry of a final judgment that adjudicates all of the claims by and against all of the parties. Md. Rule 2–602(a)(3). The basis for modification of a final order concerning care, custody, or support of a minor child is material change of circumstances, pursuant to FL 12–104. We further hold that the circuit court erred by failing to consider the child support guidelines as required by FL § 12–202 before adopting the agreement of the parties. Because of our answer to the first issue raised by the appellant, the second issue is moot.

## FACTS

The parties were married on April 19, 1986, in St. Mary's County, where they resided. Mallory was born on January 18, 1990. On November 13, 1998, appellant filed a Complaint for Absolute Divorce against appellee in the Circuit Court for St. Mary's County. The complaint requested an absolute divorce, custody of Mallory, use and possession of the family home and personal property, contribution to the mortgage payments and other expenses in connection with the family home, a monetary award, and further relief.

On May 26, 1999, the parties appeared before the circuit court for a hearing on *pendente lite* child support. On July 15, 1999, the circuit court signed a Consent *Pendente Lite* Order requiring appellant to pay *pendente lite* child support in the amount of $650.00 per month.[2]

On August 23, 1999, the parties again came before the circuit court to litigate issues of custody, visitation, child support, use and possession of the family home, and other incidental relief. At that time, the parties reached an agreement on several outstanding issues. The resulting Consent Order terminated the original *pendente lite* child support obligation and included, in pertinent part, that the parties would share joint legal custody of Mallory and that she would reside with appellee in the family home. The agreement gave appellee use and possession of the family home through June 15, 2004. Appellant received reasonable and liberal visitation.[3]

The Consent Order set forth appellant's new financial obligation as follows:

ORDERED, that [appellant] shall be responsible for the mortgage, taxes and insurance for the marital home effective August 30, 1999 through the use and possession term and shall make all payments on a timely basis. That said payments on the marital residence shall be in lieu of child support; and it is further,

ORDERED, that [appellant] will ensure that all monthly debts associated with the home will be paid up to date through August 30, 1999; and it is further,

---

**2.** There is no indication in the transcript of the hearing held on that issue on May 26, 1999, that the master considered the child support guidelines. The master merely accepted the agreement of the parties as recited by the attorney and confirmed with the parties that this was, indeed, their agreement.

**3.** Again the parties appeared before the master to place their agreement on the record. The master accepted the parties' agreement and confirmed it in open court.

ORDERED, that [appellee] shall be responsible for all debts associated with the home effective August 30, 1999 through June 15, 2004; . . . .

The Consent Order also required appellant to pay the monthly home equity loan payments; the payment on a family trailer; one half of the annual tuition, books, and fees for Mallory's private schooling; and any uncovered medical expenses.

Appellant's new monthly payment obligation totaled $1,316 [4] to begin on September 1, 1999. A review of the transcript reveals that the child support guidelines apparently were never considered or discussed at the time of the hearing. The circuit court signed the Consent Order on September 3, 1999.

On May 17, 2000, appellant filed an Amended Complaint for Absolute Divorce alleging, among other things,[5] that a material change of financial circumstances had occurred and requesting a modification of his child support obligation under the Consent Order. Appellant alleged that modifying the terms and conditions of any child support and/or custody agreement set forth in the September 3, 1999 Consent Order would be in the best interest of the child.

On February 6, 2001, the issues raised in appellant's amended complaint came before a master. Appellant testified that at the time of the Consent Order he was employed with Johnson Controls, earning approximately $44,000 per year,

---

**4.**

| | | |
|---|---|---|
| First Mortgage | $ 809/month | |
| Second Mortgage | $ 100/month | |
| Insurance (family home) | $ 300/year | ($ 25/mo.) |
| Taxes (family home) | $2,900/year | ($242/mo.) |
| One half of the child's education expenses | $1,380/year | ($115/mo.) |
| One half of the child's uncovered medical expenses | $ 25/month | |
| | $1,316/month | |

**5.** Appellant further sought custody of the minor child due to appellee's alleged failure to promote a positive relationship between appellant and his child. Additionally, appellant charged that appellee had committed adultery.

and was also self-employed with Patuxent Heating and Cooling, earning approximately $25,000 a year. He also testified that in October 1999, he was laid off from his employment with Johnson Controls and that he was now only working for Patuxent Heating & Cooling. Appellant argued that this change in circumstances justified a modification of terms of the Consent Order relating to child support.

In response to appellant's amended complaint, appellee noted that the Consent Order contained no direct child support obligation and that payments made by appellant were "in lieu of" child support. Appellee argued that an order directing a parent to make payments for the benefit of the child did not constitute child support, and thus was not subject to modification. Appellee further asserted that the Consent Order had become enrolled and that no timely motion had been made by appellant to alter or revise it. Appellee concluded that, once enrolled, the Consent Order constituted a contract between the parties that was binding regardless of appellant's employment circumstances. The master requested memoranda regarding the issues raised by appellee.

On February 27, 2001, appellant filed a Motion to Revise and/or Vacate the Consent Order. Appellant contended in this motion that if the payments he was making pursuant to the Consent Order did not constitute child support, the parties, by their agreement, had "bargained away" child support. Appellant concluded that such an agreement violated public policy and would thus be void. Appellant further contended that because the Consent Order was not a final judgment resolving all of the issues involved in the case, it could be modified at any time prior to the entry of a final judgment. Consequently, appellant argued he was not obligated to seek a modification of the Consent Order within the 30 day time limit specified in Maryland Rule 2–535. Finally, appellant contended that the Consent Order impermissibly intertwined issues of child support, custody, visitation, use and possession, mortgage, and other matters that require the court to declare the Consent Order to be "invalid and unenforceable."

Appellee merely restated the arguments she had made previously at the master's hearing.

On April 9, 2001, the matter again came before the master with respect to appellant's request to modify child support and other issues. The master noted that no child support guidelines had been prepared and requested that the attorneys provide a guidelines worksheet. Two guidelines worksheets were provided showing appellant's child support obligation as $244.30 per month and $290.63 per month, respectively.[6]

After hearing argument, the master found that the payments appellant was required to make did not constitute child support. The master determined that the agreement to make the payments had justified a downward deviation of his child support obligation to zero. The master also found that appellant had lost his job at Johnson Controls through no fault of his own, resulting in a substantial reduction of his monthly income. Nonetheless, the master decided that it would be inequitable to modify one paragraph of the Consent Order without allowing the other side to seek modifications of the rest of the order. The master recommended that appellant's request for modification of child support be denied.

Appellant filed exceptions to the master's findings, and the matter came before the circuit court on May 23, 2001, for a hearing. On July 26, 2001, the court issued its opinion denying appellant's modification request. The circuit court first noted that it was within its power to modify a child support agreement if such a modification would be in the best interest of the child. In the instant case, the court stated that appellant had not explained why modification would be in Mallory's best interest. The court opined that such an argument would be difficult to make because the purpose of the agreement was to benefit the child by allowing her to live in the family home until she finishes middle school.

---

6. Appellee's worksheet showed her income as $2,742 per month but appellant's worksheet showed it as $3,742 per month.

The court found that the Consent Order did not constitute child support and, therefore, only could be modified "by mutual participation and consent of the parties." The court also found that the court "implicitly" had recognized the application of the child support guidelines, as proven by its usage of the term "in lieu of child support," and properly allowed for deviation. Finally, the court stated that appellant's only means of redress had been pursuant to Maryland Rule 2–535(a),[7] but he had failed to timely challenge the order under that rule. Moreover, he had not moved to have the order vacated under Rule 2–535(b) for fraud, mistake or irregularity.

Appellant noted the current appeal on August 6, 2001. At that time the circuit court had not yet issued its Judgment for Divorce. That judgment, issued on October 12, 2001, did not incorporate the provisions of the September 3, 1999 Consent Order nor did it make any other provisions for child support.

We shall furnish additional facts as necessary during our discussion of the issues.

## *DISCUSSION*

### I. Timeliness of the Appeal

Appellee contends that the current appeal should be dismissed as premature. We disagree.

■ Appellee concedes that appellant filed his notice of appeal within 30 days after the circuit court's decision of July 26, 2001, overruling appellant's exceptions to the master's Report and Recommendation and denying appellant's motion to vacate or modify the Consent Order. Appellee notes, however, that the circuit court's July 26, 2001, decision was not a final judgment, and that the appeal was filed before the

---

7. Rule 2–535. Revisory power.

 (a) Generally. On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

entry of the final judgment of divorce. The court entered a final judgment of divorce on October 12, 2001. Appellant did not file a notice of appeal after enrollment of the final judgment of divorce.

Maryland Code, § 12–303 of the Court and Judicial Proceedings Article, provides in pertinent part:

Appeals from certain interlocutory orders.

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(3) An order:

(v) For the sale, conveyance, or delivery of real or personal property or *the payment of money, or the refusal to rescind or discharge such an order,* unless the delivery or payment is directed to be made to a receiver appointed by the court.

Md.Code (1973, 1998 Repl.Vol.), § 12–303(3)(v) of the Cts. & Jud. Pro. Article (emphasis added).

The Court of Appeals has clarified the type of orders that fall under § 12–303(3)(v) in *Simmons v. Perkins,* 302 Md. 232, 486 A.2d 1192 (1985). The Court, in addressing the question of whether an award of counsel fees was an order for the payment of money within the scope of § 12–303(3)(v), summarized the history of the statute. The Court stated:

The history of § 12–303 thus indicates a legislative intent to allow interlocutory appeals only from those orders for the "payment of money" which had traditionally been rendered in equity. This is confirmed by judicial decisions. The types of orders previously held by this Court to be orders for the "payment of money" are orders for alimony, child support, and related counsel fees, *Chappell v. Chappell,* 86 Md. 532, 39 A. 984 (1898), and *Pappas v. Pappas,* 287 Md. 455, 413 A.2d 549 (1980). The Court of Special Appeals has recognized the appealability of similar interlocutory orders in domestic relations litigation, *Hofmann v. Hofmann,* 50 Md.App. 240, 437 A.2d 247 (1981), and *Della Ratta v. Dixon,* 47 Md.App. 270, 284, 422 A.2d 409 (1980), as well as an interlocutory order directing an assignee for the benefit of

creditors to pay certain sums to creditors, *Genn v. CIT Corp.*, 40 Md.App. 516, 392 A.2d 1135 (1978).

> The common thread in the above-cited cases is that each involves an order for a specific sum of money which "proceeds directly to the person" and for which that individual is "directly and personally answerable *to the court* in the event of noncompliance." *Della Ratta v. Dixon, supra,* 47 Md.App. at 285, 422 A.2d 409. These characteristics of a traditional equity order for the payment of money differ markedly from those of a typical judgment at law for the payment of money. The latter type of judgment "may settle the respective rights of the parties ... but it does not purport to order anyone to do anything." *Ibid.* It is "not immediately enforceable," *id.* at 286, 422 A.2d 409.

*Simmons,* 302 Md. at 235, 486 A.2d 1192 (quoting *Anthony Plumbing of Maryland Inc. v. Attorney General, 298 Md.* 11, 20, 467 A.2d 504 (1983)).

In *Lieberman v. Lieberman,* 81 Md.App. 575, 585–591, 568 A.2d 1157 (1990), we reviewed an appealable interlocutory judgment for the payment of money. In construing the payment provision we identified the amount that was originally allocated as child support and the amount that was originally allocated as spousal support. *Id.* at 585, 568 A.2d 1157. We held that the amount identifiable as child support, whether or not allocated, is always subject to judicial modification. *Id.* at 589, 568 A.2d 1157. Not unlike *Lieberman,* the interlocutory order of July 26, 2001, falls squarely into the type of appeals permitted under § 12–303(3)(v).

## II. Standard of Review

■ Child support orders are generally within the sound discretion of the trial court. However, "where the order involves an interpretation and application of Maryland statutory and case law, [the] Court must determine whether the trial court's conclusions are 'legally correct' under a de novo standard of review." *Walter v. Gunter,* 367 Md. 386 at 392, 788 A.2d 609 (citing *In re Mark M.,* 365 Md. 687, 782 A.2d 332 (2001)). *See Also Jackson v. Proctor,* 145 Md.App. 76, 90, 801

A.2d 1080, 1089 (2002), (noting that "we will not disturb the trial court's determination as to child support, absent legal error or abuse of discretion").

### III. Payments In Lieu of Child Support

■ Appellant contends that the payment of $1,316 per month in expenses he agreed to make in lieu of child support is a form of child support and therefore is subject to modification as a child support award. Appellant, in making this claim, relies on two separate theories. First, appellant relies on the Court of Appeals' decision in *Walsh v. Walsh*, 333 Md. 492, 635 A.2d 1340 (1994). Second, appellant relies on the fact that appellee's counsel referred to appellant's payment obligation as child support. We agree the payments are child support but for somewhat different reasons. We shall explain.

■ Whatever the parties may have chosen to call the payments appellant agreed to pay, it is clear that parents are required by law to support their children. *Lacy v. Arvin*, 140 Md.App. 412, 780 A.2d 1180 (2001). In *Lacy*, the Court noted that

> [t]he parents of a child are his natural guardians and, quite apart from the moral obligations of parenthood, owe the child a legal, statutory obligation of support. *Thrower v. State ex rel. Bureau of Support Enforcement*, 358 Md. 146, 159–60, 747 A.2d 634 (2000); *see also* FL § 5–203 (stating that "[t]he parents of a minor child ... are jointly and severally responsible for the child's support, care, nurture, welfare, and education"); *Petrini v. Petrini*, 336 Md. 453, 459, 648 A.2d 1016 (1994)(noting that the legal obligation of parents to support and care for their children is "based on both common law and statutory authority"). A parent owes this obligation of support to the child, not to the other parent, *see Rand v. Rand*, 40 Md.App. 550, 554, 392 A.2d 1149 (1978)....

When the parents and child live together, so that the child is in the parents' joint physical custody, it is presumed that each parent fulfills that parent's obligation of support to the

child directly. When the parents live apart, however, it is presumed that the parent in whose custody the child resides fulfills his or her obligation of support directly; the other parent's support obligation then must be translated into dollars and paid to the custodial parent, for the child's benefit. Md.Code (1984, 1999 Repl.Vol., 2001 Supp.) § 12–204(k) of the Family Law Article; *Anderson v. Anderson,* 117 Md.App. 474, 482, 700 A.2d 844 (1997), *vacated on other grounds,* 349 Md. 294, 708 A.2d 296 (1998).

*Id.* at 422, 780 A.2d 1180.

■ ■ Ironically, the parties concede in their respective briefs filed in this Court that appellant's payments toward the expenses of the marital home are indeed a form of child support. Appellee contends, however, that appellant bargained away the right to modify the payments by not designating the payments as child support, *per se.* . This argument is simply inconsistent with Maryland law. Judge Rosalyn Bell, speaking for this Court in *Lieberman,* said:

> A parent cannot agree to preclude a child's right to support by the other parent, or the right to have that support modified in appropriate circumstances. Moreover, there are public policy considerations. The State has a vested interest in requiring a responsible parent to support his or her child. Otherwise, the State could be responsible in whole or in part for the support of a minor child, even though a parent is financially able to meet those obligations. We hold that a parent may not, even potentially, shift the burden of support to the State.

*Lieberman v. Lieberman,* 81 Md.App. 575, 588, 568 A.2d 1157 (1990).

In addition to the law's requirement that parents support their children, the language of the Consent Order in question supports appellant's argument that his payment obligation is a child support obligation. Under the terms of the Consent Order, appellant agreed to pay the mortgage, taxes, and insurance with regard to the marital residence effective August 30, 1999, through the use and possession term. The

order provided also that payments on the marital residence "shall be in lieu of child support." Both the master and the trial judge interpreted this language to mean that the payments on the marital home were not child support at all, but a deviation from the guidelines.

■ Maryland courts use the objective law of contract interpretation as the standard for a court to determine "from the language of the agreement itself, what a reasonable person in the position of the parties would have thought the agreement meant at the time it was effectuated." *Kramer v. Kramer*, 26 Md.App. 620, 630, 339 A.2d 328 (1975).

"In lieu of" means "instead of; in place of; in exchange or return for." Black's Law Dictionary, 791 (7th Edition, 1999). Here, the parties agreed that appellee and Mallory would continue to occupy the family home until 2004. It is a reasonable inference that the parties intended that appellant's promise to pay these expenses directly as they became due was a form of indirect support payments to appellee for the benefit of Mallory. The fact that the payments are made *for the benefit of Mallory* is not altered because appellant pays the mortgage and other expenses directly rather than making payments to Mallory's mother so that she can pay them.

Further review of the language of the Consent Order supports the conclusion that the payments concerning the expenses on the marital home were intended for the benefit of Mallory. The operative words are "said payments on the marital residence shall be in lieu of child support." The order does not say that the payments on the marital residence shall be in lieu of child support *and* spousal support. If the parties had intended payments for spousal support, they could have included that language in the order.

■ In addition, the Consent Order provides that Mallory and appellee will have the use and possession of the family home until 2004. The use and possession statute's sole purpose is for the benefit of the child or children of the family. Md.Code (1973, 1999 Repl.Vol.), § 8–206 of the Family Law Article; *Pitsenberger v. Pitsenberger*, 287 Md. 20, 410 A.2d

1052 (1980). A parent's or spouse's needs are of no consideration except as those needs contribute to, or reflect upon, the obligation she or he owes to the children. *Barr v. Barr,* 58 Md.App. 569 at 585, 473 A.2d 1300 (1984). *See Also Bledsoe v. Bledsoe,* 294 Md. 183, 448 A.2d 353 (1982) (holding that a wife with a child from a prior relationship was not entitled to use and possession of the family home). Moreover, in addition to any order that the noncustodial parent pay direct child support payments, the trial court may order one or both of the parents to contribute to the mortgage on the family home, insurance, and taxes. Md.Code (1984, 1999 Repl.Vol.), § 8–208(c) of the Family Law Article. It stands to reason that if appellant agreed to make the payments in order that Mallory could stay in the home with which she is familiar, those payments are made for her benefit, and therefore, should be considered child support payments.

The principles of Maryland law regarding child support, the language of the Consent Order, the parties' concessions about the purpose of the payments, and the fact that the payments were made in connection with use and possession all support this Court's conclusion that the payments in question are child support. Accordingly, the trial court erred by finding that the Consent Order did not provide for child support or its functional equivalent.

## IV. Child Support Guidelines

▪▪▪ A child's best interest is of paramount importance and cannot be altered by the parties to a child support agreement. *Shrivastava v. Mates,* 93 Md.App. 320, 327, 612 A.2d 313 (1992) (citing *Lieberman v. Lieberman* at 588, 568 A.2d 1157). Judge Harrell, speaking for this Court in *Shrivastava,* said:

This policy is codified by the child support guidelines. See *Tannehill v. Tannehill,* 88 Md.App. 4, 11, 591 A.2d 888 (1991) (Guidelines intended "to remedy the low levels of most child support awards relative to the actual cost of rearing children" and "improve the consistency and equity of child support awards"). The guidelines require a trial court to presume, unless rebutted, that the amount of child

support dictated by the guidelines is correct. *Id.* The guidelines include specific language regarding the review of agreements for child support. Subsection (2) of § 12–202(a) provides, in pertinent part, as follows:

(2)(i) There is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines set forth in this subtitle is the correct amount of child support to be awarded.

(ii) The presumption may be rebutted by evidence that the application of the guidelines would be unjust or inappropriate in a particular case.

(iii) In determining whether the application of the guidelines would be unjust or inappropriate in a particular case the court may consider:

1. *the terms of any existing separation or property settlement agreement* or court order, including any provision for payment of mortgages or marital debts, payment of college education expenses, the terms of any use and possession order or right to occupy to the family home under an agreement, any direct payments made for the benefit of the children required by agreement or order, or any other financial considerations set out in an existing separation or property settlement agreement or court order; and

2. the presence in the household of either parent of other children to whom that parent owes a duty of support and the expenses for whom that parent is directly contributing. (Emphasis added.)

Judge Rosalyn B. Bell, writing for this Court in *Tannehill,* 88 Md.App. at 14, 591 A.2d 888, observed that the considerations set forth in subsection (2)(iii) of § 12–202(a) "delineate situations that affect the financial resources of the parents or the financial needs of the children." While the guidelines do not exclude "other relevant financial considerations that have the same or similar impact as the considerations listed [,]" *id.,* the terms of an agreement for child support between the parties are relevant *only* to the

extent that they *impact upon the financial resources of the parents or the financial needs of the children.*

That this was the intent of the General Assembly is demonstrated by an examination of subsection (2)(iv) of § 12–202(a). It provides that, while a trial court may deviate from the guidelines if application thereof would be unjust or inappropriate, the court must make specific written or oral findings supporting such deviation, including:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interest of the child; and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

§ 12–202(a)(2)(iv).

*Shrivastava,* 93 Md.App. at 328–29, 612 A.2d 313 (1992). (Emphasis added.)

In the case *sub judice,* the trial court failed to follow the statutory scheme for deviation from the guidelines. We have held in other cases that failure to make findings in accordance with subsection (2)(iv) of § 12–202(a) is reversible error. *Tannehill,* 88 Md.App. at 15, 591 A.2d 888; *Shrivastava,* 93 Md.App. at 330, 612 A.2d 313. Upon our review of the record below, it is clear that the court at the outset accepted the agreement of the parties on September 3, 1999, without considering its impact upon the financial resources of the parents or the financial needs of Mallory. There is no evidence in the record that the court had before it any verified child support guidelines at the time it adopted the parties' agreement. No mention was made of the guidelines and no verified guidelines worksheet was filed in the proceeding. Although the court was aware that appellant paid $650.00 in child support, pendente lite,[8] no assessment was made as to

---

8. See note 2.

how the agreement to pay pursuant to the alternate plan varied from the guidelines, the amount of child support that would have been required under the guidelines, or how the deviation served the best interest of Mallory.

It was not until the trial court considered appellant's Request to Modify or Vacate the Consent Order that the court mentioned the guidelines that were prepared in light of the parties' financial circumstances at that time. This was almost two years after the court adopted the agreement of the parties on September 3, 1999. It is clear that a court should consider the guidelines whenever establishing or modifying child support. Md.Code (1984, 1999 Repl.Vol.) § 12–202(a)(i) of the Family Law Article. *Goldberger v. Goldberger,* 96 Md.App. 313, 325, 624 A.2d 1328 (1993).

Initially, in 1999, the court committed reversible error by failing to consider the guidelines and the impact of the agreement upon the financial resources of the parents or the financial needs of Mallory. As a result, the court erred in failing to make findings to support its departure from the guidelines. Judge Harrell, speaking for this Court, in *Shrivastava* said:

> The trial court, in finding that departure from the guidelines is warranted, may explain that the best interests of the child are served because the child is, in effect, receiving the amount of support to which it is presumptively entitled under the guidelines. Thus, the requirement that a trial court make specific written or oral findings supporting departure from the guidelines effectively restricts the court's consideration of the terms of an agreement for child support between the parties to the impact of that agreement upon the financial resources of the parents or the financial needs of the children.

*Shrivastava,* 93 Md.App. at 330, 612 A.2d 313.

Between February 26, 2001, and July 26, 2001, several proceedings were held in the Circuit Court for St. Mary's County concerning appellant's request to modify or vacate the Consent Order of September 3, 1999. At a hearing before the

master, he concluded that there was no child support order requiring appellant to pay a sum certain. In essence, the master determined that the Consent Order did not constitute child support, and the payment of $1,316 was a deviation from the child support obligation. The master recommended that the court deny appellant's request to modify or vacate the order. In explaining his findings and recommendations, the master said:

Upon the Court's review of the September third, nineteen ninety-nine, Order, the Court Order clearly reflects that these payments are made in lieu of child support. The Court finds that there is no child support order requiring Mr. Knott to pay a sum-certain monthly. The Court has reviewed Counter–Defendant's February sixth, two thousand and one, Exhibit as well as the Court's Exhibit Number One, Madam Clerk, which are child support guidelines worksheets. I've initialed Court's Exhibit Number One which indicate [sic] a range of child support payments between two hundred and forty four dollars and thirty cents and month to two hundred and ninety dollars and sixty-three cents per month.... The Court also finds upon its review of the September third, nineteen ninety nine [sic], Order that the Order was the culmination of expenses, negotiations between the parties with the assistance of counsel whereby various issues that were being presented to the Court at that time as contested issues between the parties were resolved as result of the Order dated September third, nineteen ninety nine [sic].... The Court finds that it is not Court ordered child support. That they are payments that he receives credit for in lieu of child support, thereby having no child support order or, in essence, a deviation.

The appellant filed exceptions to the master's Report and Recommendations. Appellant argued below and on appeal that the payment obligation was child support subject to judicial modification. Appellee contended that the payment obligation does not satisfy the requirements of a child support award. In addition, she argued that the court must give

deference to the agreement of the parties which provides a substitute for child support. Having had the benefit of oral argument, the transcript of the proceedings before the master and the Report and Recommendations of the master, the court issued its written opinion denying the exceptions and denying the appellant's motion to modify or vacate the consent order. The court issued its findings on July 26, 2001. It said in pertinent part:

Based on the foregoing facts and analysis of controlling law, this Court concludes that the Consent Order entered into on September 3, 1999 does not constitute child support. Based on this conclusion, it follows that the Consent Order can only be modified by mutual participation and consent of the parties. Despite Plaintiff's alternative argument that if the Consent Order is not viewed as child support it should be void as against public policy, this Court finds that [the], sic, in issuing the Order, the Court implicitly recognized application of the Guidelines, and allowed for a deviation. This Court does not see such a deviation as against the best interest of the child, and as such, will not set aside the agreement entered into by consent of the parties on September 3, 1999.

The clearest evidence that the Court, upon entering the September 3, 1999 Order, had considered the Guidelines is its inclusion of the "in lieu of" language. This Court finds persuasive Defendant's analysis of that phrase as used in the Consent Order. Looking at the language of the Consent Order in tandum [sic] with the August 23, 1999 hearing transcript, it is easily discernable to this Court that the parties contemplated the terms relating to the Use and Possession, as well as other provisions of the Agreement, for the benefit of Mallory. As such, the Court issuing the Order could have easily found that the parties intended such payments to be in lieu of a child support award, or, in other words, a deviation from the Guidelines.

Because this Court finds that the existing Order will stand, then it follows that Plaintiff's available remedy by this Court would be pursuant to Rule 2–535. Because it is

well beyond the 30 day period for Plaintiff to appeal per Rule 2–535(a), and because Plaintiff made no indication he was appealing under 2–535(a), the only remedy available through this Court is under 2–535(b). Plaintiff did not raise an argument under this section of the Rule, nor does this Court find that there was evidence of fraud, mistake, or irregularity. As such, the Order will stand and Plaintiff's request for modification or, in the alternative, for vacating the order as against public policy will be denied.

In denying the motions to modify or vacate, the court's analysis rested upon the faulty premise that appellant's payment obligation was not child support but a deviation from the child support guidelines. In failing to characterize the appellant's payment obligation as either child support or the functional equivalent of child support, the court ignored the child support guidelines.

The record reveals that in April 2001, at the time of the modification hearings, appellant's actual monthly income was $1,770 and appellee's monthly income was at least $2,742, or $3,742 as suggested by appellant in his guidelines worksheet. The range for appellant's monthly child support obligation was calculated at $244.30 to $290.63. The court failed to assess the impact of the payments under the Consent Order on the financial resources of appellant and appellee, or on the needs of Mallory. This was reversible error. The court should have applied the guidelines because they are presumptively correct as to the appellant's child support obligation. *See* Md.Code (1984, 1999 Repl.Vol., 2001 Suppl), § 12–202(a)(2) of the Family Law Article. If the court was convinced that application of the guidelines was unjust or inappropriate, then it was required to make certain findings. Md. Code (1984, 1999 Repl.Vol.; 2001 Suppl), § 12–202(a)(2)(v) of the Family Law Article. In particular, the court failed to state how it would be in Mallory's best interest for appellant to have to survive on $454.00 per month.[9] The guidelines

---

9. Based on appellant's monthly salary of $1,770 minus $1,316, the obligation under the Consent Order, equals $454 per month.

established that appellant's child support obligation was either $244.30 or $290.63 per month. The guidelines did not establish that appellant's child support obligation was $1,316.

Both the master and the trial judge made attempts to validate the court's issuance of the Consent Order on September 3, 1999. The master characterized the order as a legitimate deviation from the guidelines. The trial judge suggested that the court applied the guidelines by implication when it adopted the parties' agreement. The court reasoned that the resulting deviation was appropriate because the parties intended the use and possession and payment provisions for the benefit of Mallory.

Even if we were to agree with the court and conclude that the provisions under the Consent Order were neither child support nor its functional equivalent, and we do not, neither the give and take of the negotiations nor the eventual agreement, in and of itself, can ever be a sufficient reason for deviation from the guidelines. The court's analysis, when reviewing matters affecting care and support of children, begins with the guidelines and ends with an assessment of the impact of the agreement upon the financial resources of the parents and the financial needs of the child vis-a-vis the best interest of the child standard. *Shrivastava v. Mates,* 93 Md.App. 320, 612 A.2d 313 (1992); *Tannehill v. Tannehill,* 88 Md.App. 4, 591 A.2d 888 (1991); *Lieberman v. Lieberman,* 81 Md.App. 575, 568 A.2d 1157 (1990).

### V. Modification of Agreements

There are essentially four ways to modify or change the terms of an agreement affecting the care, custody, education or support of a minor child. The parties could mutually agree to change the terms; the court could change the terms pursuant to § 8–103 of the Family Law Article; the court could change the terms pursuant to §§ 12–104 and 12–202 of the Family Law Article; or the court could change the terms pursuant to Rule 2–535. Because the order in this case is interlocutory, only the first two grounds for modification are

**258**

relevant to our analysis. The other situations involve enrolled and final orders which are not before us in this appeal.

■ The trial court correctly stated that the Consent Order was subject to judicial modification pursuant to § 8–103(a), **if the modification would be in the best interest of the child.** The court was unpersuaded that the Consent Order could not be in the best interest of Mallory because, under it, she is permitted to reside in the family home as contemplated by the parties. This analysis, however, fails to weigh the economic impact of the Consent Order upon appellant's ability to continue to meet the payment obligation. In essence, the court refused to modify the Consent Order because it was the embodiment of the parties' previous agreement to settle the issue of child support. Because the court found that the payment provision did not constitute child support, the court opined that the Consent Order was not subject to modification under § 8–103. The court went further and concluded that the Consent Order was enrolled and was not subject to judicial modification except by mutual participation and consent of the parties. Because more than 30 days had passed since the entry of the Consent Order, the court felt that the only remedy through the court was under Rule 2–535(b). There were no allegations or proof of fraud, mistake, or irregularity; therefore, the court concluded that it had no authority to modify the order. The court erred in its analysis and its conclusions.

■ A Consent Order is a valid contract between the parties that is judicially enforceable. *Kirby v. Kirby,* 129 Md.App. 212, 220, 741 A.2d 528 (1999). The trial court mischaracterized the nature of the Consent Order. The order is an appealable interlocutory order to pay money as child support or the functional equivalent of child support. Because the order is interlocutory, it is subject to change at anytime before final judgment. *See* Md. Rule 2–602(a)(3); Md.Code (1973, 1998 Repl.Vol.), § 12–303 of the Courts and Judicial Proceedings Article. Because the order affects the care, custody, support and education of a minor child, the court is

not bound by it, even though the parents have agreed to its terms. If the Consent Order is not in the best interest of the child, the court can refuse to accept it. See *Payne v. Payne,* 73 Md.App. 473, 534 A.2d 1360 (1988); *Reese v. Huebschman,* 50 Md.App. 709, 440 A.2d 1109, *cert. denied* 293 Md. 547 (1982).

In *Payne,* appellant complained that the trial court awarded child support in an amount greater than that which had been awarded *pendente lite,* in the absence of a showing of any change in circumstances subsequent to the *pendente lite* order. Judge Bloom speaking for this court said:

> In support of that contention, appellant cites *Slacum v. Slacum,* 158 Md. 107, 148 A. 226 (1930); *Cole v. Cole,* 44 Md.App. 435, 409 A.2d 734 (1979); and *Tidler v. Tidler,* 50 Md.App. 1, 435 A.2d 489 (1981), for the proposition that an existing order for child support may be modified only when evidence clearly indicates a change of circumstances justifying the same. Although the cases cited all support the abstract principle of law for which they are cited, neither they nor that abstract principle is relevant here. None of the cases involved a pendente lite order, and we think it is not appropriate to apply the "change in circumstances" requirement to pendente lite orders." They, after all, are designed to provide for purely temporary needs on a short term basis, whereas the provisions for support in a final judgment of divorce are perforce intended to be more permanent and cover equally essential but less frequent recurring living expenses. Consequently, the same evidence that would necessitate a relatively small award of pendente lite support may very well justify a much larger award of support in the final decree.

*Payne,* 73 Md.App. at 481, 534 A.2d 1360. *See also Rock v. Rock,* 86 Md.App. 598, 615, 587 A.2d 1133 (1991)(citing *Payne v. Payne* ).

The change in circumstances requirement is not applicable in establishing a final award that terminates a *pendente lite* order. *Reuter v. Reuter,* 102 Md.App. 212 at 241, 649 A.2d

24 (1994). A *pendente lite* award may be modified in accordance with the guidelines at the time a final award is made. *Id.*

An interlocutory order by definition is temporary and not final. Black's Law Dictionary, 819 (7th Edition 1999). Here, the Consent Order was issued in September 1999. On July 26, 2001, the circuit court denied appellant's Motion to Modify or Vacate the Consent Order. On August 6, 2001, appellant noted this appeal. The final judgment of divorce was not entered until October 12, 2001. Therefore, the Consent Order was never incorporated into the final judgment of divorce. The order is subject to modification at anytime prior to final judgment. *See* Md. Rule 2–602(a)(3). The Consent Order and the order denying the modification of the Consent Order were both interlocutory orders of the court.[10]

The appropriate standard to apply when deciding whether to modify the interlocutory Consent Order issued on September 3, 1999, is Md.Code (1984, 1999 Repl.Vol.) § 8–103 of the Family Law Article. Section 8–103(a) provides:

(a) Provision concerning children.—The court may modify any provision of a deed, agreement, or settlement with respect to the care, custody, education, or support of any minor child of the spouses, if the modification would be in the best interests of the child.

■■■ We have previously noted that § 8–103 allows for the modification of agreements respecting the care, custody, education, or support of a minor child whether they are merged or incorporated into court judgments or remain solely a matter of contract. *Ruppert v. Fish,* 84 Md.App. 665, 674, 581 A.2d 828 (1990) (citing *Stancill v. Stancill,* 286 Md. 530, 535–36, 408 A.2d 1030 (1979)). We note that agreements made by parents ordinarily will be based upon the child's best interest. Such agreements therefore will only be modifiable if a court deter-

---

**10.** But for the noting of an appeal prior to the entry of the final judgment of divorce, the interlocutory orders would have become final on October 12, 2001. Md. Rule 2–602.

mines that the agreement contained a defect or that the agreement ceased to be in the child's best interest. *Id.* at 674–75, 581 A.2d 828; *Kierein,* 115 Md.App. at 458, 693 A.2d 1157.

Although a court may modify provisions concerning a minor child, whether or not incorporated into a final judgment, we have previously held that such a modification is not appropriate unless the court determines that "(1) the provision in question does not serve the child's best interest and (2) the proposed modification does." *Ruppert,* 84 Md. App. at 676, 581 A.2d 828; *see gen. Pumphrey v. Pumphrey,* 11 Md.App. 287, 292, 273 A.2d 637 (1971); *Kierein,* 115 Md.App. at 458, 693 A.2d 1157. The Court also noted that "[a]bsent some defect that would make the agreement invalid or unenforceable, it ordinarily should be given effect." *Ruppert* at 674, 581 A.2d 828. Usually any upward deviation from the guidelines would be justified as being in the financial best interest of the child. *In re Joshua W.,* 94 Md.App. 486, 501, 617 A.2d 1154 (1993).

In the case at bar, the trial court opined that it "was hard to imagine" that a downward modification of the parties' agreement would be in best interest of the child. Here, however, there was evidence that appellant suffered a substantial loss of income through no fault of his own. It is not difficult for this Court to see that requiring appellant to live on $454 per month, while paying $1,316 per month in support of Mallory, may very well not be in her best interest. Such an onerous payment obligation could force appellant to file bankruptcy, resulting in poor credit and the loss of the family home through foreclosure. It cannot be argued that such a result would be in Mallory's best interest. Even assuming, *arguendo,* that a downward modification is not in the best financial interest of Mallory, if, as a result of the loss of income, appellant is unable to satisfy the payment provisions of the agreement, modification appears warranted. The trial court

erred in failing to exercise any discretion to modify the Consent Order, considering the circumstances.[11]

 Appellant alleged, in support of his Motion to Modify or Vacate the Consent Order, a "material change in circumstances." That language is not the appropriate standard for modification of an interlocutory order or *pendente lite* order. As previously stated, those orders may be changed at any time before the entry of a final judgment, in the discretion of the court. If the issue, however, is the modification of a final enrolled order, then the appropriate standard for modification is "material change in circumstances." Md.Code (1984, 1999 Rep. Vol.), § 12–104 of the Family Law Article; *Sczudlo v. Berry,* 129 Md.App. 529, 743 A.2d 268 (1999); *Kierein v. Kierein,* 115 Md.App. 448, 450, 693 A.2d 1157 (1997); *Wills v. Jones,* 340 Md. 480, 489, 667 A.2d 331 (1995).[12] If loss of income or employment is a change of circumstances justifying modification of an enrolled judgment, we fail to see how it would not justify modification of an interlocutory order.

## VI. *Walsh v. Walsh*

Appellant relies upon *Walsh v. Walsh,* 333 Md. 492, 635 A.2d 1340 (1994), for the proposition that the parties may deviate from the guidelines but they need to be clear about their intentions to deviate. This is a correct statement of the law. It does not assist in the analysis, however, given the posture of this appeal.

---

11. From our review of the record, it is not clear that the court fully appreciated that it had the discretion to modify this agreement without the mutual consent of both parties.

12. If the issue before the court had been revision of an enrolled final order because of fraud, mistake or irregularity, then Rule 2–535(b) would have been relevant to the discussion. *Tandra S. v. Tyrone W.,* 336 Md. 303, 315, 648 A.2d 439 (1994)(stating that Rule 2–535(b) generally applies to all final judgments); *Platt v. Platt,* 302 Md. 9, 485 A.2d 250 (1984)(holding a motion to revise an enrolled divorce decree because of a discrepancy between the separation agreement and the decree, filed more than 5 years after entry of the enrolled decree, was properly denied.)

In *Walsh*, the noncustodial parent, as part of a property settlement agreement incorporated into the parties' judgment of divorce, agreed to pay one-half the monthly mortgage payments on the family home for a period of time and $40.50 per week, per child, in child support. *Id.* at 494, 635 A.2d 1340. The amount designated as child support was below the child support guidelines. *Id.* at 495, 635 A.2d 1340. The agreement provided for use and possession of the family home for the custodial parent and the minor children. *Id.* at 494, 635 A.2d 1340. When the custodial parent decided to sell the family home, the noncustodial parent's obligation to pay the mortgage terminated. *Id.* at 495, 635 A.2d 1340.

The Court of Appeals suggested that it was reasonable to assume that the payment of one-half of the mortgage was intended to be a form of child support. *Id.* at 502, 635 A.2d 1340. The Court remanded Walsh for further determinations as to the existence of a material change in circumstances considering the noncustodial parent's contributions to the mortgage payments. *Id.* at 502–505, 635 A.2d 1340.

Walsh is instructive for its analysis of the payment of other expenses coupled with a provision for use and possession of the family home. A brief comparison with the facts of *Walsh* and the case at bar shows that the payment provisions under the Consent Order can be appropriately characterized as child support. For the most part, however, *Walsh* is distinguishable. First, Walsh involved the application of the change in circumstances requirement to a **final judgment** in reliance upon Md.Code (1984, 1999 Repl.Vol.) §§ 12–104(a) and 12–202(b) of the Family Law Article. Here, the change in circumstances requirement is irrelevant because the order under review is interlocutory. Second, even if change of circumstances was the relevant standard in this case, the change in circumstances in Walsh was the passage of an event causing the level of support the children actually received to diminish. Here, the change in circumstances is appellant's substantial loss of income, affecting the calculation of the guidelines.

## VII. Conclusion

On remand the court must first apply the guidelines. There is a rebuttable presumption that the amount of the child support which would result from an application of the guidelines is the correct amount of child support to be awarded. Md.Code (1984, 1999 Repl.Vol.), § 12–202(a)(2) of the Family Law Article. If the court determines from the evidence that application of the child support guidelines would be unjust or inappropriate in this case, then it must make specific written or oral findings supporting the deviation. Md.Code (1984, 1999 Repl.Vol.), § 12–202(a)(2)(iv) of the Family Law Article. The court must decide whether to adopt the agreement or reject it in light of the best interest of the child, considering the current financial resources of the parents and the financial needs of Mallory.

**JUDGMENT DENYING THE MOTION TO MODIFY OR VACATE THE CONSENT ORDER IS REVERSED. CASE IS REMANDED TO THE CIRCUIT COURT FOR ST. MARY'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY THE APPELLANT AND 50% BY THE APPELLEE.**