66 A.3d 122

**James Patrick GUIDASH, II**

v.

**Lisa TOME f/k/a Lisa Guidash, et al.**

**No. 502, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

May 6, 2013.

726

728

Rachel A. Smith, (D'Alesandro & Miliman, PA, on the brief), Baltimore, MD, for Appellant.

Jonathan L. Pomerance, (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: KEHOE, BERGER, NAZARIAN, JJ.

KEHOE, J.

James P. Guidash, II appeals a judgment of the Circuit Court for Cecil County, the Honorable Keith A. Baynes presiding, modifying his child support obligation to be paid to his former spouse, Lisa Tome, for support of their minor child. He asserts that a provision of the parties' marital separation agreement precludes the court from requiring him to pay child support; that there was insufficient evidence of a change in material circumstances; and that the circuit court made several clearly erroneous findings of fact in calculating the amount of his child support obligation. None of his contentions affords a basis for relief by this Court and we affirm the circuit court's judgment.

BACKGROUND

The parties were married on November 12, 1991. Two children were born to the parties as a result of this marriage: James P. Guidash, III, born July 17, 1992, and Joseph C. Guidash, born June 27, 1995. The parties' marriage deteriorated and on July 6, 2001, the parties entered into a voluntary separation and property settlement agreement (the "Separation Agreement").

The Separation Agreement provided that the parties would have joint legal custody and physical custody of the children and that, with exceptions for holidays, they would reside three days a week with their father and four days a week with their mother. Ms. Tome, and therefore the children as well, were entitled to live rent free in the marital home for a period of ten years, during which period Mr. Guidash would be "responsible for the payment of all mortgage expenses, including real estate taxes and homeowner's insurance." Mr. Guidash also agreed to maintain the children on his medical insurance policy and to pay one-half of their miscellaneous medical expenses. Ms. Tome agreed to transfer her interest in the marital home to Mr. Guidash for $25,000, to be paid within three years after the date of the Separation Agreement, and to waive her interest in Mr. Guidash's pension in return for a payment of $20,000, to be paid within ten years of the date of the Separation Agreement. The Separation Agreement also provided (emphasis added):

> In regard to child support, *at this time the parties expressly agree that there shall be no child support in this matter,* due to the terms and conditions set forth in this Agreement, and specifically with respect to the provisions regarding the parties' marital home, and *this may not be modified by any Court.*

Thereafter, Mr. Guidash filed a complaint for absolute divorce, attaching the Separation Agreement as an exhibit. The court granted the parties an absolute divorce on October 29, 2002 and incorporated, but did not merge, the Separation

Agreement into its judgment.[1] From July, 2001 until July, 2011, Ms. Tome, James, and Joseph resided in the marital home. During that time, Mr. Guidash maintained health insurance for James and Joseph; paid the mortgage, insurance, and taxes associated with the marital home; and sometimes paid other expenses incurred by Ms. Tome for the children. Additionally, and pursuant to the Separation Agreement, Mr. Guidash paid Ms. Tome $25,000 in June, 2004.

In May, 2011, as he had a right to do under the Separation Agreement, Mr. Guidash notified Ms. Tome that she had 30 days to move out of the marital home. In July, 2011, Mr. Guidash paid Ms. Tome the agreed-upon sum of $20,000 for her waiver of a claim to his pension. At Ms. Tome's request, Mr. Guidash paid $15,000 of this sum to Ms. Tome's new landlord, representing a deposit and approximately two years of rent for an apartment. Ms. Tome retained the remaining $5,000. In short, insofar as we can tell from the record, Mr. Guidash performed his obligations under the Separation Agreement.

On December 15, 2011, Ms. Tome, with the assistance of the Cecil County Office of Child Support Enforcement, filed a motion for modification of child support seeking to establish a child support obligation for Mr. Guidash for the benefit of the parties' remaining minor child, Joseph. Specifically, Ms. Tome requested that the court "[c]alculate and order a child support obligation in accordance with ... Maryland law," stating that:

The [currently existing child support] order is from Cecil County and specifies there is to be no child support at the time the order was agreed upon.

There is a material change in circumstances that warrants a review for modification.

The material change[s] in circumstances are that the Plaintiff is no longer residing in the mutual marital home as specified in the Voluntary Separation and Property Settle-

---

1. Judge Baynes did not preside over the divorce action.

ment Agreement and the income of both parties has changed significantly. . . .

Mr. Guidash opposed the modification and the matter was set for a hearing before a master on January 26, 2012. Both parties testified at the hearing.

Mr. Guidash testified that he had retired from the Maryland State Police in May, 2011 and, since that time, has received $5,710 per month in gross retirement income. He stated that he was leasing the parties' former marital home, of which he was the sole owner, at a rate of $1,500 per month. Mr. Guidash also testified that he continued to maintain health insurance for Joseph (and James as well despite his emancipation) for approximately $153.00 per month. Additionally, Mr. Guidash testified that Joseph stayed with him each week on Friday and Saturday, during most holidays and, for approximately two weeks during the summer.

Ms. Tome testified that she and Joseph moved to an apartment in Rising Sun, Maryland located in Cecil County in July, 2011. Ms. Tome testified that she used $15,000 of the $20,000 paid by Mr. Guidash in July, 2011 to pay the rent on this apartment for two years so she would not have to "worry about rent until after [Joseph] graduate[s] from high school." Ms. Tome testified that she was employed at Octorara Publishing, earning an annual income of $36,660. Additionally, Ms. Tome testified, in effect, that Joseph has a learning disability that manifests itself as difficulty in reading and that he attends Perryville High School to take advantage of a program tailored to his needs.[2] According to Ms. Tome, Joseph also attends the Cecil County School of Technology. Ms. Tome stated that she transports Joseph to and from these schools, incurring approximately $100 per week in transportation expenses. With regard to visitation, Ms. Tome testified that Joseph "was with his father less than . . . thirty overnights last year, despite the fact that he's supposed to be

---

**2.** Because Ms. Tome testified that Joseph needed a waiver to attend Perryville High School, we assume there is another public high school closer to his residence.

[there more frequently]." Additionally, Ms. Tome asserted that Joseph "was with his father ... maybe two weekends last summer at all ... maybe two."

At the conclusion of the hearing, the master made findings of fact and recommendations, in which the master determined that the parties' combined actual monthly income before taxes was $11,865. Thereafter, the master concluded:

> There had been a material change in circumstances which warranted the establishment of child support. Defendant no longer has use and possession of the [marital] home ... and sought new living arrangements.

> The waiver of child support in the Agreement between the parties is not effective to deny the award of child support at this time, which is in the best interest of the minor child.

> Child support was calculated using [Ms. Tome]'s employment income of $3,055.00 per month and imputing to her monthly income in the amount of $1,666.00 for the income of $20,000.00 which she received from [Mr. Guidash] in July 2011 divided by 12 months. Credit was also given to [Ms. Tome] for transportation expenses in the amount of $433.00 per month for the expenses associated with transporting the minor child to Perryville [High School] each day.

> Child Support was calculated by using [Mr. Guidash]'s retirement income of $5,710.00 plus rental income of $1,500.00 per month. Credit was given to [Mr. Guidash] for payment of health insurance premiums in the amount of $153.00 per month (premiums for both children of the parties).

> Child support in accordance with the Maryland Child Support Guidelines was calculated to be $1,140.00 per month.

Mr. Guidash filed exceptions to the master's findings of fact and recommendations contending that the master was clearly erroneous in: (1) concluding that the Separation Agreement was modifiable; (2) concluding that there was a material change in circumstances beyond what the Separation Agree-

ment contemplated; (3) attributing $1,500 in monthly rental income to him; (4) determining that Ms. Tome needed to incur transportation expenses for Joseph to attend his school; (5) determining Ms. Tome incurred $433 per month in transportation expenses for Joseph; and (6) recommending child support based on the sole custody worksheet calculation, rather than joint custody.

On March 28, 2012, the circuit court held a hearing on the exceptions. Following the hearing, Judge Baynes denied Mr. Guidash's exceptions and entered an order adopting the master's recommendations, requiring Mr. Guidash to pay $1,140 per month for the support of Joseph commencing December, 2011, with the first payment due on April 7, 2012, and additionally ordering Mr. Guidash to pay 10% of that amount each month towards any accumulated arrearage. Mr. Guidash has appealed.

### STANDARD OF REVIEW

The trial court's decision as to the appropriate amount of child support involves the exercise of the court's discretion. A court can abuse its discretion when it makes a decision based on an incorrect legal premise or upon factual conclusions that are clearly erroneous. We review the contentions that the circuit court erred as to matter of law on a *de novo* basis. *In re Adoption/Guardianship of Ta'Niya C.*, 417 Md. 90, 100, 8 A.3d 745 (2010). Our role in reviewing factual findings made by a master and then adopted by the circuit court is more limited. Generally in exceptions proceedings, findings of fact by a master are set aside only if they are clearly erroneous. *See Domingues v. Johnson*, 323 Md. 486, 496, 593 A.2d 1133 (1991); *see also Kierein v. Kierein*, 115 Md.App. 448, 453–56, 693 A.2d 1157 (1997); *Krikstan v. Krikstan*, 90 Md.App. 462, 469, 601 A.2d 1127 (1992) (both applying the *Domingues* standard in reviewing child support orders based on masters' findings). This review takes place primarily at the circuit court level. The trial court, in ruling on a party's exceptions:

> must carefully consider … allegations that certain findings of fact are clearly erroneous, and decide each such question.

The chancellor should, in an oral or written opinion, state how he resolved those challenges. Having determined which facts are properly before him, and utilizing accepted principles of law, the chancellor must then exercise independent judgment to determine the proper result.

*Domingues,* 323 Md. at 496, 593 A.2d 1133.

■■■■ Our role in reviewing a circuit court's conclusions in this context is as follows:

Appellate discipline mandates that, absent a clear abuse of discretion, a chancellor's decision that is grounded in law and based upon facts that are not clearly erroneous will not be disturbed. Where the findings are supported by evidence and therefore not clearly erroneous, the trial judge is left with discretion to determine the proper disposition of the case.

*Bagley v. Bagley,* 98 Md.App. 18, 31–32, 632 A.2d 229 (1993).

Finally, in very rare circumstances, a court can abuse its discretion by reaching an unreasonable or unjust result even though it has correctly identified the applicable legal principles and applied those principles to factual findings that are not clearly erroneous. In *North v. North,* 102 Md.App. 1, 648 A.2d 1025 (1994), Judge Wilner surveyed a number of cases defining the concept of "abuse of discretion" and concluded:

The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. That kind of distance can arise in a number of ways, among which are that the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective.

*Id.* at 14, 648 A.2d 1025.

## DISCUSSION

### I. The Judgment of Divorce

■■■■ Before addressing the parties' contentions, we will comment briefly upon the 2002 judgment of divorce. That

judgment stated that the Separation Agreement "is hereby incorporated but not merged into this Judgment of Absolute Divorce." At no point in the divorce proceedings did the circuit court make any determination of child support under the Maryland Child Support Guidelines, MD.CODE ANN, FAM. L. ("F.L.") § 12–201–204. Use of the guidelines to determine child support is mandatory and has been so since 1990. *Tannehill v. Tannehill,* 88 Md.App. 4, 11, 591 A.2d 888 (1991). Parents may agree that child support is to be provided in non-monetary forms. However, before a court approves such an arrangement, the record must reflect that the court has engaged in the analysis required by F.L. § 12–202(a)(2)(v), which states:

1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines.

2. The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interests of the child; and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

In *Walsh v. Walsh,* 333 Md. 492, 503–04, 635 A.2d 1340 (1994), the Court of Appeals commented:

We also point out for the bench and the bar that, while parties are encouraged to settle domestic disputes, when doing so, they must be mindful of the needs of their children. When a judge approves and incorporates an agreement of the parents into an order of support, the judge must do more than merely rubber stamp anything to which the parents agree.... In reviewing support agreements, judges should refer to the child support guidelines, and

when approving and incorporating into a court order an agreement containing a downward deviation from the guidelines, the record should reflect the reasons why the judge adopted such an agreement.

\*　　\*　　\*

There is no exception in the [guidelines] statute for child support orders which are based on agreements of the parents.

The record in the present case does not indicate that the circuit court undertook the statutorily-required analysis before it entered the judgment of absolute divorce. Its failure to do so would have been reversible error had an appeal been filed. *See Knott v. Knott*, 146 Md.App. 232, 253, 806 A.2d 768 (2002) ("Initially, [in entering a consent order as to child support], the court committed reversible error by failing to consider the guidelines and the impact of the agreement upon the financial resources of the parents or the financial needs of [the minor child]."); *Shrivastava v. Mates*, 93 Md.App. 320, 330, 612 A.2d 313 (1992) ("The court also failed to make the necessary findings accompanying its departure from the guidelines. While the court indicated that items of value were conveyed under the Agreement instead of a portion of the support presumed under the guidelines, it did not state the estimated value of the items conveyed.").

II.　The Circuit Court's Authority to Award Child Support

Mr. Guidash argues that the terms of the Separation Agreement deprived the circuit court of the authority to enter a child support order against him. He articulates this contention in two ways in his brief. First, he contends that the non-modifiability provision of the Separation Agreement is binding upon the parties and the court. Second, he asserts that, because he performed his obligations under the Separation Agreement, that Ms. Tome now has to pay rent cannot be considered a material change in circumstances because it was an eventuality contemplated by the parties when they signed the Separation Agreement. We are not persuaded by these arguments and address them in turn.

### A. The Court's Authority to Modify
### the Separation Agreement

Mr. Guidash contends that because the parties agreed that their child support agreement was not modifiable, the court did not have the authority to modify the award. In addition to what he characterizes as the plain language of the Separation Agreement,[3] Mr. Guidash advances a public policy argument, contending that permitting courts to modify parties' child support agreements will deter parties from their use.

Mr. Guidash is correct that separation agreements are "generally favored by the courts as a peaceful means of terminating marital strife and discord so long as they are not contrary to public policy." *Gordon v. Gordon,* 342 Md. 294, 300–01, 675 A.2d 540 (1996) (citation omitted). Moreover, a parent's financial obligation to pay child support can be modified when the parent "agrees to pay, for a period of time, something that would ordinarily be part of the other parent's expenditures for child support...." *Walsh,* 333 Md. at 505, 635 A.2d 1340; *see also, Knott,* 146 Md.App. at 247–50, 806 A.2d 768 (2002) (evaluating a request to modify a child support arrangement where payor parent had been paying the mortgage on the home where the child resided in lieu of child support). These principles are subject to limitations, however.

First, parents may not waive or bargain away a child's right to receive support. *See, e.g., Walsh,* 333 Md. at 504, 635 A.2d 1340 ("Even before the guidelines, this Court made it clear that agreements between the parents were not binding on a court ordering child support."); *Stambaugh v. Child Support Enforcement Administration,* 323 Md. 106, 111, 591 A.2d 501 (1991) (providing that the "duty to support one's

---

**3.** Ms. Tome does not challenge Mr. Guidash's assertion that the Separation Agreement, read literally, would prevent a court from entering a support order that required him to do anything other than provide rent-free housing to Ms. Tome and his children for ten years and pay his share of medical expenses. We need not address whether we agree with his interpretation of the Separation Agreement because, as we will explain, the court always has the authority to modify child support when doing so is in the best interest of the child.

minor children may not be bargained away or waived"); *Co-rapcioglu v. Roosevelt*, 170 Md.App. 572, 606, 907 A.2d 885 (2006) (stating that "[a] parent may not bargain away the child's right to support, and modification of that support, from the other parent").

■■■ Second, child support, regardless of any parental agreement, is always subject to court modification. As this Court stated in *Ruppert v. Fish*, 84 Md.App. 665, 674, 581 A.2d 828 (1990) (emphasis in original omitted, other emphasis added):

> The parents of a minor child are generally free to enter into an agreement respecting the care, custody, education, and support of their child. Indeed, they are the persons who ought to decide those things. *Unlike certain other aspects of a marital relationship that can be the subject of an agreement, however, provisions relating to the welfare of minor children are, by statute, subject to court modification.* Md. Fam. Law Code Ann. § 8–103(a) provides that "[t]he court may modify any provision of a deed, agreement, or settlement with respect to the care, custody, education, or support of any minor child of the spouses, if the modification would be in the best interests of the child." ... [ ]

*See also Stancill v. Stancill*, 286 Md. 530, 535, 408 A.2d 1030 (1979) ("[T]he chancellor cannot be handcuffed in the exercise of his duty to act in the best interest of a child by any understanding between parents"); *Shrivastava*, 93 Md.App. at 327, 612 A.2d 313 ("The law and policy of this State is that the child's best interest is of paramount importance and cannot be altered by the parties.").

■■■ Thus, a court may modify an award of child support " 'at any time if there has been shown a material change in circumstances that justify the action.' " *Shrivastava*, 93 Md. App. at 333, 612 A.2d 313 (quoting *Cole v. Cole*, 44 Md.App. 435, 439, 409 A.2d 734 (1979)). *See also Lieberman v. Lieberman*, 81 Md.App. 575, 587–88, 568 A.2d 1157 (1990) (providing that child support is always subject to modification, even if a separation agreement provides otherwise). As such, we con-

clude the parties' agreement that the child support provision was non-modifiable did not limit the circuit court's authority to revisit this issue in light of changed circumstances. To put it another way, the provision in the Separation Agreement that purported to deprive the circuit court of the authority to address Joseph's need for child support in the light of a change in material circumstances is void as violative of the clearly-established public policy of this State.

### B. An Eventuality Contemplated by the Separation Agreement

■ Mr. Guidash contends that the circuit court did not have the authority to modify his child support obligation because the change in material circumstances alleged by Ms. Tome was exactly what was the parties intended, namely that Ms. Tome and the children would move out of the marital home and pay rent and other expenses at another residence. He states in his brief:

Clearly, there was no material change in circumstances that arose in this case. Instead the testimony and evidence presented before the Master show that [Mr. Guidash] fulfilled the terms of the parties' Agreement. Furthermore, because the Agreement does not terminate on a specific date ... the end of Appellee's period of use and possession of the marital home does not constitute a material change in circumstances. The parties clearly contemplated what would happen ten years after they signed the Agreement, as it was reduced to writing and never challenged by either party for ten years....

■ As we have already discussed, while parents may agree to an alternative child support arrangement, they may not waive or bargain away a minor child's right to support. Because a parent's child support obligation can change based upon an alteration in material circumstances, it follows that the parties cannot agree either explicitly or implicitly that material changes will not occur in the future. Here, the Separation Agreement created an alternative child support arrangement when, in lieu of formal child support, Mr. Gui-

dash agreed to pay all expenses associated with the marital home for ten years, permitting Ms. Tome and the children to reside there rent-free. As long as the record reflects that the court explicitly concluded that a departure from the child support guidelines is in the child's best interest after considering the F.L. § 12–202(2)(v) factors, there is nothing inherently wrong in such an arrangement. *See, e.g., Walsh,* 333 Md. at 505, 635 A.2d 1340. Mr. Guidash contends that there is no change in circumstances because Ms. Tome's leaving the house—and thus having to pay rent—was an event contemplated by the parties when they signed the Separation Agreement. However, he overlooks the fact that his obligation to pay child support is to his son, not his former spouse, and that no agreement, regardless of its terms, can relieve him of that obligation. *See* F.L. § 8–103(a); *Stambaugh,* 323 Md. at 111, 591 A.2d 501; *Corapcioglu,* 170 Md.App. at 605–06, 907 A.2d 885.

### III. A Material Change in Circumstances

Mr. Guidash argues that even if the court did have the authority to modify the Separation Agreement, there was insufficient evidence to show a material change in circumstances warranting the court's child support order. Specifically, Mr. Guidash contends that "the testimony and evidence presented showed that the parties remain in substantially the same financial positions they held when they signed the Separation Agreement." We are not persuaded by this argument.

A court may modify a child support award where there is a showing of "a 'material' change in the circumstances, needs, and pecuniary condition of the parties from the time the court last had the opportunity to consider the issue." *Kierein,* 115 Md.App. at 456, 693 A.2d 1157. It is clear that Ms. Tome's move from the marital home, which she occupied rent-free, to different housing, for which she paid rent, can constitute a material change in circumstances. Indeed, F.L. § 12–204 contemplates a child support modification when one party's permitted use, possession, or occupancy of the family home ends (emphasis added):

§ 12–204. Determination of child support obligation.

＊ ＊ ＊

(k) *Use, possession or occupancy of family home.—*

(1) Upon the expiration of a use and possession order or the expiration of the right to occupy the family home under a separation or property settlement agreement and upon motion of either party, the court shall review the child support award.

(2) *If the allocation of financial responsibility for the family home was a factor in departing from the guidelines under subsection (a) of this section, the court may modify the child support, if appropriate in all the circumstances,* upon the expiration of the use and possession order or the expiration of the right to occupy the family home under a separation or property settlement agreement.

In this context, we see no difference between a child support obligation fixed by a previous court order and one that has been agreed upon by the parties. In the present case, the master concluded, and the circuit court agreed, that there was a material change in circumstances because Ms. Tome no longer had use and possession of the marital home at Mr. Guidash's expense and, as such, was incurring new housing expenses. Neither party contested that Ms. Tome and Joseph no longer resided in the marital home nor that Ms. Tome was now paying rent.[4] The circuit court did not err in concluding that there was a material change in circumstances.

## IV. The Court's Order for Child Support

Mr. Guidash argues that the circuit court based its award on several clearly erroneous conclusions of fact, namely that: (1) Mr. Guidash received rental income of $1,500 per month; and

---

4.  Mr. Guidash's argues that there was no material change in circumstances because Mr. Guidash, at Ms. Tome's request, "paid [her] landlord a year and a half's rent, up front and in full...." This contention fails because the source of this payment was money that Mr. Guidash was obligated to pay Ms. Tome in return for her waiver of her right to share in his pension.

(2) Ms. Tome incurred $433 each month in expenses related to Joseph's education. Mr. Guidash also contends that the court used the incorrect child support guideline because he and Ms. Tome shared physical custody of Joseph. Finally, Mr. Guidash argues that the court abused its discretion by making the award because the award caused Mr. Guidash to incur an "unanticipated debt." We are not persuaded by any of these contentions.

Because Mr. Guidash's argument refers to facts used to calculate his child support obligation, we shall briefly discuss the Maryland Child Support Guidelines and their use. To comply with federal law, the General Assembly enacted the guidelines in 1989. The guidelines' purpose was (and is) to: "(1) ... remedy a shortfall in the level of awards that do not reflect the actual costs of raising children[;] (2) ... improve the consistency, and therefore the equity, of child support awards[;] and (3) ... to improve the efficiency of court processes for adjudicating child support." *Voishan v. Palma,* 327 Md. 318, 322, 609 A.2d 319 (1992) (internal quotation marks omitted). To fulfill these goals, the General Assembly used an income shares model for the guidelines, resting upon the principle that:

> [A] child should receive the same proportion of parental income, and thereby enjoy the standard of living, he or she would have experienced had the child's parents remained together. Accordingly, the model establishes child support obligations based on estimates of the percentage of income that parents in an intact household typically spend on their children.

*Voishan,* 327 Md. at 322–23, 609 A.2d 319 (internal citations omitted). Thus, a court looks to the parties' actual monthly income, as defined in § 12–201 of the Family Law Article. Where the combined adjusted actual income [5] of a child's

---

**5.** Section 12–201(c) of the Family Law Article defines "adjusted actual income" as follows:

    (c) "Adjusted actual income" means actual income minus:

parents is $15,000 per month or less, a court must use the guidelines to calculate child support. F.L. § 12–202(a)(1), and 12–204(e). Put plainly, the guidelines require that the court determine the parties' monthly actual income, calculate the basic support amount, add certain child-related expenses to the basic support amount, and then allocate the total between the parents. *See* F.L. § 12–201 *et seq.*

### A. Mr. Guidash's Actual Income

Mr. Guidash contends that the master and the court were clearly erroneous in concluding that he earned $1,500 each month by leasing the marital home, an amount which was used to calculate his actual monthly income. Some additional facts are necessary to place this argument in context.

At the hearing before the master, Mr. Guidash testified that he leased the marital home for $1,500 per month and that he had sole title to the property. The master excluded additional testimony by Mr. Guidash about expenses he incurred in order to rent out the marital home after Ms. Tome vacated in July, 2011:

[Mr. Guidash's Counsel]: And when [Ms. Tome] moved out what was the condition of the house?

[Mr. Guidash]: Uninhabitable.

[Mr. Guidash's Counsel]: Did you have a property inspection done?

[Mr. Guidash]: Yes, I did.

[Ms. Tome's Counsel]: Your Honor, I would just object, just to the relevancy of the condition of the property. The obligation we are seeking is after that.

[The Master]: How is this relevant, counsel?

[Mr. Guidash's Counsel]: Your Honor, because of the condition that Ms. Tome left the property in Mr. Guidash had

---

(1) preexisting reasonable child support obligations actually paid; and

(2) except as provided in § 12–204(a)(2) of this subtitle, alimony or maintenance obligations actually paid.

to expend thousands of dollars on repairing the property so he could then have tenants rent it. The tenants did not move in until November, and the money that he was using, he can testify that it was from a line of credit, that he didn't have any other income. So given that the court [admitted] the rental income, I wanted to show the total picture.

[The Master]: In light of the fact that ... this complaint was filed in December, I don't think that those expenses are going to be relevant, and I'm going to sustain.

At the conclusion of the hearing, the master included $1,500 when calculating Mr. Guidash's monthly actual income.

At the hearing before the circuit court, Mr. Guidash argued that he had incurred significant debt to make the marital home "habitable" before he could rent the property to tenants and that this debt, expended after Ms. Tome moved out in July, 2011, should have been subtracted from the $1,500 in rental income each month because § 12–201(b)(2) of the Family Law Article states that rental income for purposes of calculating actual income is the "gross receipts minus ordinary and necessary expenses required to produce income." F.L. § 12–201(b)(2). The flaw in Mr. Guidash's argument is that significant repairs to render a rental property habitable are not "ordinary and necessary expenses required to produce income" but rather capital investments to preserve and enhance the value of his asset. The circuit court did not err when it concluded that the master did not err in excluding such evidence.

B. Ms. Tome's Transportation Expenses

Mr. Guidash contends that the court was clearly erroneous when it concluded that Ms. Tome incurred $433.00 in transportation expenses because she did not present sufficient evidence of the actual expenses incurred or that the "purported special education program [Joseph attends] is unavailable at another, closer public school."

The guidelines specifically account for transportation expenses associated with the minor child's education. Section 12–204(i) provides:

(i) *School and transportation expenses.*—By agreement of the parties or by order of court, the following expenses incurred on behalf of a child may be divided between the parents in proportion to their adjusted actual incomes: (1) any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child. . . .

F.L. § 12–204(i). At the master's hearing, Ms. Tome testified that Joseph benefitted from being enrolled at Perryville High School:

. . . [Joseph] is a slow reader. He was failing in other school systems, so I got a waiver for him to attend Perryville High School where they have paraprofessionals in the classroom to help him with his issues. . . .

Moreover, Ms. Tome testified regarding the expenses she incurred to transport Joseph to this program:

. . . I've been driving him back and forth to school since he was in 8th grade every day.

\* \* \*

Gas prices fluctuate, but I'm going to say when I lived in Elkton it cost me 140 a week, now it costs me probably about a hundred dollars.

The master found that Ms. Tome incurred transportation expenses of $433 per month. The circuit court, after reviewing the transcript of the master's hearing, deferred to the master's findings. Specifically, Judge Baynes stated:

[Although] one can argue whether . . . [there are] extraordinary expense[s] for Joseph dealing with his educational and medical condition[,][the] master chose to accept that testimony. So again, I don't find any error with that. There was evidence to support it, and that was [the master's] decision. I mean, when you look at [the transcript] where Ms. Tome testified regarding Joseph [it appears that]. . . .

[t]his is not a new situation.... [S]he's been driving [him] back and forth for a number of years.

The court did not err in deferring to the master's finding after concluding that the finding was supported by evidence in the record. *See Domingues,* 323 Md. at 496, 593 A.2d 1133 (a circuit court should give deference to a master's findings of fact where they are not clearly erroneous).

C.   Support Based on Sole Custody or Shared Custody

██   Mr. Guidash next contends that the court erred in adopting the master's child support calculation which used the sole custody worksheet:

Moreover, [the] Master ... further erred when she used the Sole Custody Worksheet for the calculation of [the] Child Support Guidelines. Clearly, based on the evidence presented at the hearing, the minor child spends over 130 overnights [each year] with [Mr.] Guidash. As such, if Guidelines are to be calculated, a shared custody worksheet must be used.

The evidence presented to the master does not support this contention.

Section 12–201(m) of the Family Law Article defines "shared physical custody":

(1) "Shared physical custody" means that each parent keeps the child ... overnight for more than 35% of the year and that both parents contribute to the expenses of the child ... in addition to the payment of child support.

(2) Subject to paragraph (1) of this subsection, the court may base a child support award on shared physical custody:

(i) solely on the amount of visitation awarded; and

(ii) regardless of whether joint custody has been granted.

F.L. § 12–201(m).

Section 12–204(m) of the Family Law Article provides that when a court finds that the 128 overnight threshold has been met, the child support obligation will be adjusted *pro rata* between the parents.[6] In other words, a child must stay

---

**6.** Specifically, § 12–204(m) of the Family Law Article provides:

overnight with each parent for a minimum of 128 nights to trigger a shared custody child support calculation.  *See* F.L. § 12–201(m)(1).

The master heard conflicting testimony as to how often Joseph stayed with his father.  Mr. Guidash testified that Joseph stayed with him overnight every Friday and Saturday, during most holidays, and for two weeks during the summer, and argued that this amounted to at least 130 overnights.  In contrast, Ms. Tome testified that Joseph's overnight visits at the Guidash home were sporadic and that Joseph had spent approximately 30 overnights with his father in the preceding year.  In weighing this conflicting testimony, the master was entitled to conclude that Ms. Tome was more credible, which was clearly the basis for her recommendation to the circuit court.  The court, in reviewing the master's recommendation, did not err in accepting the master's resolution of the conflict-

---

(m)  *Shared physical custody cases.*—
(1) In cases of shared physical custody, the adjusted basic child support obligation shall first be divided between the parents in proportion to their respective adjusted actual incomes.
(2) Each parent's share of the adjusted basic child support obligation shall then be multiplied by the percentage of time the child ... spend[s] with the other parent to determine the theoretical basic child support obligation owed to the other parent.
(3) Subject to the provisions of paragraphs (4) and (5) of this subsection, the parent owing the greater amount under paragraph (2) of this subsection shall owe the difference in the 2 amounts of child support.
(4) In addition to the amount of the child support owed under paragraph (3) of this subsection, if either parent incurs child care expenses under subsection (g) of this section, health insurance expenses under subsection (h)(1) of this section, extraordinary medical expenses under subsection (h)(2) of this section, or additional expenses under subsection (i) of this section, the expense shall be divided between the parents in proportion to their respective adjusted actual incomes.  The parent not incurring the expense shall pay that parent's proportionate share to:
(i) the parent making direct payments to the provider of the service; or
(ii) the provider directly, if a court order requires direct payments to the provider.
(5) The amount owed under paragraph (3) of this subsection may not exceed the amount that would be owed under subsection (1) of this section.

ing evidence on the issue.[7] *See Domingues*, 323 Md. at 496, 593 A.2d 1133 (providing that the court will defer to the master's findings of fact where they are not clearly erroneous). The circuit court did not err.

### D. "Unanticipated Debt"

Mr. Guidash argues that the court erred in making its child support award because:

> The ramifications of requiring [Mr. Guidash] to now pay $1,140.00 per month in child support, after meeting all of the financial obligations he agreed to ten years ago and now that his income is ... lower than it was when he signed the Agreement, essentially requires him to incur unanticipated debt. An order for child support that forces a party to incur unanticipated debt is clearly prohibited under Maryland law.... To require [him] to incur unanticipated debt after paying [Ms. Tome] more than what he would have been expected to pay under the Guidelines in both cash and direct payment of expenses for ten years is unconscionable and not in the best interest of the parties' minor child.

Based on our review of the record, Mr. Guidash did not argue to the circuit court that he was financially unable to make the child support payment recommended by the master. Therefore, we will not consider the argument on appeal. *See* Md. Rule 8–131(a) (providing that an issue is not properly before this Court unless it "plainly appears by the record to have been raised or decided by the trial court.").

Preservation issues aside, we see little merit in the contention. The two cases Mr. Guidash relies upon, *Lynch v. Lynch*, 342 Md. 509, 521, 677 A.2d 584 (1996) and *Rivera v. Zysk*, 136 Md.App. 607, 615, 766 A.2d 1049 (2001), provide him with at best scant support. In fact, *Lynch* offers none at all. That

---

7. Mr. Guidash argues on appeal that his visits with Joseph were impaired because Mr. Guidash had been undergoing treatment for cancer. This argument was not raised to during the hearing before the master nor to the circuit court during the exceptions hearing. Neither the master nor the court erred by not considering evidence that was not presented to them.

case involved an appeal from an order holding Lynch in contempt for failure to pay child support. The trial court sentenced her to incarceration and set a purge amount that was beyond her ability to pay. The Court's analysis in *Lynch* is confined solely to civil contempt proceedings in which the contemnor is incarcerated. The restraints on a court's authority to incarcerate an individual for failing to pay child support are very different conceptually from the scope of the court's discretion in determining the appropriate amount of child support in the first place.[8] *Rivera v. Zysk,* 136 Md.App. 607, 615, 766 A.2d 1049 (2001), although also a contempt case, is closer to the mark because therein we stated, "[w]hen a support order calls for the payment of money, the defendant is entitled to the opportunity to show that he had neither the estate nor the present ability to pay the obligation." This remains an accurate statement of the law. It is of little help to Mr. Guidash because he was afforded just such an opportunity at the hearing before the master.

At that hearing, there was sufficient evidence from which the master could conclude, as she did, that Mr. Guidash's monthly income was $7,210. The child support award, $1,140.00 per month, was based upon the master's application of the relevant statutory guidelines for determining child support. The results stemming from application of the statutory guidelines are presumptively correct. *See* F.L. § 12–202(a)(2). If for some reason Mr. Guidash had neither the income nor the assets to support his child, it was his obligation to present supporting evidence to the master. Neither the master nor the circuit court can be faulted for not considering evidence that was not before them.

In summary, our review of the record leads us to conclude that Judge Baynes understood and appropriately applied the relevant legal standards to the facts as found by the master.

---

8. The Court's analysis in *Lynch* no longer describes the law of this State. *See Arrington v. Dep't of Human Res.,* 402 Md. 79, 94–101, 935 A.2d 432 (2007) (explaining that *Lynch* was abrogated by amendments to Maryland Rule 15–207(e)).

While he ultimately deferred to the master's findings, Judge Baynes conducted the sort of thorough, independent review of the evidence required by *Domingues v. Johnson,* 323 Md. at 492, 593 A.2d 1133. We have no basis to disturb his resolution of this case.

**THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY IS AFFIRMED.**

**APPELLANT TO PAY COSTS.**